UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MAURICE NUNN,                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          CAUSE NO. 3:10-CV-008 WL
                                 )
ED BUSSE, *et al.*,              )
                                 )
          Defendants.            )

<u>OPINION AND ORDER</u>

Maurice Nunn, a prisoner currently housed at the Madison County Jail, filed a

complaint pursuant to 42 U.S.C. § 1983, alleging violation of his federally protected

rights while he was confined at the Miami Correctional Facility ("MCF"). According to

the complaint, in November 2009, Mr. Nunn was assigned to work in Pen Products,

which is a prison industrial operation. He alleges that Pen Products used formaldehyde

as part of its industrial process, and that as a result he contracted a serious rash that

caused severe sores and intense pain. He further alleges that MCF medical personnel

did not properly treat his rash, causing him unnecessary pain.

Pursuant to 28 U.S.C. § 1915A(a), the court must review the merits of a prisoner

complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon

which relief may be granted, or seeks monetary relief against a defendant who is

immune from such relief. FED. R. CIV. P. 12(b)(6) provides for the dismissal of a

complaint, or any portion of a complaint, for failure to state a claim upon which relief

can be granted. Courts apply the same standard under § 1915A as when addressing a

motion under RULE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). "Dismissal is appropriate only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Id.*

Mr. Nunn seeks declaratory and injunctive relief and damages. (DE 1 at 21-22). But his injunctive relief claims are moot because he is no longer housed at the MCF. Mr. Nunn has completed his sentence and been released from the Indiana Department of Correction ("IDOC"). If a prisoner is released or transferred to another prison, "his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996), quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988). Mr. Nunn's release renders his requests for injunctive relief against IDOC and MCF officials moot. *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990), *cert. denied* 501 U.S. 1208 (1991. A prisoner's transfer or release also renders his claims for declaratory relief moot. *Higgason v. Farley*, 83 F.3d at 811, *citing Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (applying the capable-of-repetition doctrine without discrimination between claims for declaratory relief and claims for injunctive relief). It is possible that Mr. Nunn could at some point in the future return to the MCF and employment at the Pen Products facility there, but the mere possibility that this might occur is insufficient. The standard to be applied here is whether he is "likely to be retransferred," and there is no reasonable basis that he is "likely to be retransferred" to the MCF and be employed at Pen Products.

The plaintiff brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Burrell v. City of Matoon*, 378 F.3d 642 (7th Cir. 2004). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every § 1983 case is whether a state actor has deprived the plaintiff of a right secured by the Constitution or laws of the United States.

In his first claim, Mr. Nunn alleges that Pen Products supervisors Sandra Roark and Tonya Zimmerman used a sufficient quantity of formaldehyde in their industrial facility to cause him to develop a severe and painful rash.[1] The Eighth Amendment's prohibition against "cruel and unusual punishments" does not only restrain affirmative conduct, such as prison officials' use of excessive force against prisoners. See, e.g., *Hudson v. McMillian*, 503 U.S. 1, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992). It also imposes a duty upon prison officials to provide humane conditions of confinement and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994) (quotation omitted).

Prisoners' work assignments are conditions of confinement under the Eighth Amendment. *See Powers v. Snyder*, 484 F. 3d 929 (7th Cir. 2007) (requiring prisoner to

---

[1] The court notes that his complaint suggests that he may have filed his complaint before completing the grievance process. (DE 1 at 10). If this is the case, the defendants may raise this defense in a motion for summary judgment.

work at a job that required walking and lifting prison officials refused prisoner walking cane despite arthritis in hip); *Bagola v. Kindt*, 131 F 3d 632 (7th Cir. 1997) (recognizing need for *Bivens* remedy where statutory workers compensation scheme inadequate to address prisoner work-related injury claims that constitute Eighth Amendment violations). The Eighth Amendment "forbids knowingly compelling an inmate to perform labor that is beyond the inmate's strength,

dangerous to his or her life or health, or unduly painful."*Ambrose v. Young*, 474 F 3d 107-0 (8th Cir. 2007) *citing Sanchez v. Taggart*, 144 F.3d 1154, 1156 (8th Cir. 1998).

Accordingly, the Court must analyze Mr. Nunn's claims arising from working in the MCF Pen Products facility under the Eighth Amendment's prohibition against the infliction of "cruel and unusual punishment." *Wilson v. Seiter*, 501 U.S. 294 (1991). *Wilson* establishes that the Court must apply both an objective and a subjective test to determine whether specified conditions of confinement violate the Eighth Amendment. To provide an arguable basis for his claim, Mr. Nunn must allege that each "official knows of and disregards an excessive risk to inmate safety."*See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).

The question of the defendants' culpability is subjective, but the risk involved is evaluated on an objective basis. The objective test asks whether the alleged deprivation is sufficiently serious or grave to be an Eighth Amendment violation. The courts have subjected various dangerous working conditions to constitutional scrutiny. *Cf. Hail v. Bennett*, 379 F.3d 462, 464-65 (7th Cir. 2004) (risk of electrocution from working on live

400-volt line without protective gloves); *Bagola v. Kindt*, 39 F.3d 779, 780 (7th Cir.1994)

(risk of amputation from dangerous machinery); *See also Christopher v. Buss*, 384 F.3d

879, 882-83 (7th Cir. 2004) (collecting cases); *Fruit v. Norris*, 905 F.2d 1147, 1150-51 (8th

Cir. 1990) (exposure without protective gear to raw sewage inside a well with

temperatures reaching 125 degrees); *Wallis v. Baldwin*, 70 F.3d 1074, 1075-77 (9th Cir.

1995) (exposure to asbestos with inadequate protective gear). In order to constitute an

Eighth Amendment violation, an allegedly dangerous prison condition must deprive an

inmate of "the minimal civilized measure of life's necessities."An "objectively

'sufficiently serious'" risk, is one that society considers so grave that to expose any

unwilling individual to it would offend contemporary standards of decency.

Under the subjective test, Mr. Nunn must allege the defendants were deliberately

indifferent to a serious risk of substantial harm. Deliberate indifference is "something

approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or

a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir.

1992). The defendant "must be both aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must draw the inference."

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This total disregard for a prisoner's safety is

the "functional equivalent of wanting harm to come to the prisoner." *McGill v.*

*Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

> [C]onduct is deliberately indifferent when the official has acted in an
> intentional or criminally reckless manner, *i.e.,* the defendant must have
> known that the plaintiff was at serious risk of being harmed and decided

not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

> Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless.

*Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). Deliberate indifference is a very high standard.

Mr. Nunn asserts that defendants Roark and Zimmerman exposed him to a high dose of formaldehyde, causing him to develop a serious and painful rash. Giving him the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say that he can prove no set of facts in support of his Eighth Amendment claim against defendants Roark and Zimmerman that would entitle him to relief.

In his second claim, Nunn alleges that medical staff at the MCF, including Dr. Noe Marandet, M.D., Health Administrator Lynn Frye, Nursing Director Karen Cummings, and Nurses K. Stephenson, Brown, and L. Gamblion were deliberately indifferent to his serious rash.

The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir.1996) (*cert. denied,* 519 U.S. 1126 (1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). In

6

medical cases, the Eighth Amendment test is expressed in terms of whether the

defendant was deliberately indifferent to the plaintiff's serious medical needs. *Williams*

*v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir.

1997). A medical need is "serious" for Eighth Amendment purposes if it is either one

that a physician has diagnosed as mandating treatment, or is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention, and if untreated

could result in further significant injury or unnecessary pain, and that significantly

affects the person's daily activities or features chronic and substantial pain. *Gutierrez v.*

*Peters,* 111 F.3d at 1373.

Medical malpractice, negligence, or even gross negligence do not constitute

deliberate indifference, nor does dissatisfaction or disagreement with a course of

treatment prescribed by a doctor. *Johnson v. Doughty*, 433 F.3d. at 1013; *Perkins v. Lawson*,

312 F.3d 872, 875 (7th Cir. 2002); *Dunnigan v. Winnebago County*, 165 F.3d 587, 592 (7th

Cir. 1999); *Goka v. Bobbit*, 862 F.2d 646, 650 (7th Cir. 1988). Mere differences of opinion

among medical professionals regarding a patient's appropriate treatment do not give

rise to deliberate indifference. *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).

> For a medical professional to be liable for deliberate indifference to
> an inmate's medical needs, he must make a decision that represents such a
> substantial departure from accepted professional judgment, practice, or
> standards, as to demonstrate that the person responsible actually did not
> base the decision on such a judgment.

* * *

Jackson was incorrect in his recitation of Williams's duty – medical

professionals are not required to provide "proper" medical treatment to prisoners, but rather they must provide medical treatment that reflects "professional judgment, practice, or standards." There is not one "proper" way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Jackson v. Kotter*, 541 F.3d 688, 697-8 (7th Cir. 2008) (quotation marks and citations omitted).

Mr. Nunn alleges that when Dr. Marandet saw him on November 5, 2009, "he had no idea of what I had, where it originated from, or how to treat it! So he prescribed some chlorphenoramine as he said 'your (sic) allergic to something.'" (DE 1 at 16) (Emphasis in original). Mr. Nunn saw Dr. Marandet again on November 16, 2009, when he told Dr. Marandet "'I've been told by a worker in Pen Products that the material is chemically treated with formaldehyde' so he picks up a booklet and states too (sic) me 'that he'll prescribe me a medication called prednisone tablets . . ..' and he also stated 'you need to quit your job.'" (*Id.*) (Emphasis in original). Mr. Nunn responded that he was leaving anyway "and probably wouldn't need him to write me a work order not to work." (*Id.*). Mr. Nunn states "this clearly shows that the medical staff here is not on top of their game . . .." (*Id.*).

The plaintiff's submissions establish that Dr. Marandet saw Mr. Nunn at least twice, examined him, and prescribed medication. Prisoners are not entitled to any particular treatment, and a disagreement with a physician over a course of medical

treatment states no claim under 42 U.S.C. § 1983. *Hendricks v. Faulkner*, 525 F. Supp. 435, 458 (N.D. Ind. 1981), *aff'd in part vacated in part on other grounds sub nom.*, *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983) (a mere disagreement with a physician over a course of medical treatment states no claim under § 1983). The constitutional standard is not whether a doctor is at the top of his game; the standard is whether he was deliberately indifferent to an inmate's serious medical needs. That a prison doctor sees and treats an inmate normally establishes lack of indifference to his medical problems. *Estelle v. Gamble*, 429 U.S. at 107-108. Even giving Mr. Nunn the benefits of the inferences to which he is entitled, his allegations do not suggest that Dr. Marandet evidenced "a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d at 677.

Mr. Nunn alleges that he sent Health Administrator Lyn Frye "a medical request on 11/5/09 requesting some type of assistance due to my rash . . . and on 12/1/09 my mother . . . spoke with Ms. Frye whom told my mother that she would have to call back and talk to someone else in the medical department!" (DE 1 at 14). He alleges that "Ms. Frye is the Medical Administrator and should know just as much if not more than anyone in her department. Deliberate Indifference." (*Id.*).

Mr. Nunn alleges that on November 5, 2009, he asked Defendant Frye for medical assistance; he also states in his complaint that he saw a doctor the same day. (DE 1 at 16). This does not suggest that Defendant Frye was deliberately indifferent to Mr. Nunn's serious medical needs; rather, it establishes that he saw a doctor the same

9

day he requested it. That Defendant Frye may have told Mr. Nunn's mother that she would need to talk to someone else about his medical condition also does not suggest deliberate indifference. Defendant Frye is the medical administrator, not a doctor or a nurse, and that she may have referred Mr. Nunn's mother to a medical professional to explain his medical condition and course of treatment does not suggest deliberate indifference to his serious medical needs.

Mr. Nunn alleges that in her response to a medical request slip dated November 20, 2009, Director of Nursing Karen Cummings told him "she couldn't find any injury report on Mr. Nunn and she'd suggest Nunn talks to his counselor." (DE 1 at 14). He alleges that "this is a clear case of neglect" on her part. (*Id.*). But that Nurse Cummings may not have been able to find a particular document does not suggest deliberate indifference to Mr. Nunn's serious medical needs. Even if it was negligent, as Mr. Nunn alleges, negligence, even gross negligence, does not constitute deliberate indifference. *Johnson v. Doughty*, 433 F.3d. at 1013.

Mr. Nunn also names Nurses Stephenson, Brown, and Gamblion as defendants. He alleges that Nurse Stephenson showed a "lack of professionalism" by not being "aware that a rash of this nature - in this type of environment could lead to a serious outbreak in such a tight community and either advise her supervisors of such and or recommend treatment too render said infection natural." (DE 1 at 15). But the plaintiff alleges his rash was the result of an allergic reaction to formaldehyde used at Pen Products, and was not an infectious condition. By the time Nurse Stephenson had

10

contact with Mr. Nunn, he was already under treatment for his rash by Dr. Marandet, and he states no claim upon which relief may be granted against Nurse Stephenson.

Mr. Nunn alleges that he saw Nurse Brown on November 11, 2009, and told him she "felt the rash was healing (in her opinion)." (DE 1 at 15). She saw him again on November 20, and after examining him she "schedule[d] me to see the doctor concerning my rash." (*Id.*). According to the complaint, Nurse Brown was performing preliminary examinations and referring patients who she believed needed further treatment to the doctor, as she did with Mr. Nunn on November 20. Even if she was mistaken in believing on November 11 that Mr. Nunn's rash was healing, malpractice, negligence, or merely being mistaken do not constitute deliberate indifference.

Mr. Nunn alleges that he sent medical requests on November 18, and 20, 2009, about his continuing rash problems. (DE 1 at 15). He states that "the response I get back from Nurse" Gamblion was to refer him to triage and then "'refer to Cory for scheduling.' Nothing is done concerning treatment! Too ease or stop my suffering!!" (DE 1 at 15-16). Mr. Nunn's complaint establishes that he was seen by Nurse Brown on November 20, and referred to the doctor. That Nurse Gamblion handled his medical requests by having him called in and examined does not suggest that she was deliberately indifferent to his rash.

In addition to the officials actually responsible for operating the Pen Products operation at the MCF, and the persons directly responsible for treating his rash, Mr.

Nunn names several supervisory officials as defendants. These include IDOC Commissioner Ed Busse, MCF Superintendent Mark Sever, Assistant Superintendent Treadwell, Major Hail, Captain Tucker, Captain Truax, Captain Bittle, and Legal Advisor Claire Retek. He alleges that he made these officials aware that he was having problems but they refused to investigate Pen Products or the lack of medical attention he was receiving, and that some of them did not respond to his requests that photographs be taken of his sores. (DE 1 at 11-14).

Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). A person cannot be held liable for damages under § 1983 unless the person was personally involved in the alleged wrongdoing. A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains, *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). "Only persons who cause or participate in the [Constitutional] violations are responsible" for those violations, failure to investigate or ruling against a prisoner's grievance "does not cause

12

or contribute to the violation." *George v. Smith*, 507 F.3d. 605, 609 (7th Cir. 2007)

(citations omitted).

In regard to suing numerous supervisory defendants, "[t]he assumption

underlying this choice of defendants – that anyone who knew or should have known of

his [jaw] condition, and everyone higher up the bureaucratic chain must be liable – is a

bad one. Liability depends on each defendant's knowledge and actions, not on the

knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 593-94

(7th Cir. 2009) (citation omitted).

> Bureaucracies divide tasks; no prisoner is entitled to insist that one
> employee do another's job. The division of labor is important not only to
> bureaucratic organization but also to efficient performance of tasks;
> people who stay within their roles can get more work done, more
> effectively, and cannot be hit with damages under §1983 for not being
> ombudsmen. Burks's view that everyone who knows about a prisoner's
> problem must pay damages implies that he could write letters to the
> Governor of Wisconsin and 999 other public officials, demand that every
> one of those 1,000 officials drop everything he or she is doing in order to
> investigate a single prisoner's claims, and then collect damages from all
> 1,000 recipients if the letter-writing campaign does not lead to better
> medical care. That can't be right. The Governor, and for that matter the
> Superintendent of Prisons and the Warden of each prison, is entitled to
> relegate to the prison's medical staff the provision of good medical care.
> That is equally true for an inmate complaint examiner.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (citation omitted).

> Burks's contention that any public employee who knows (or should
> know) about a wrong must do something to fix it is just an effort to evade,
> by indirection, *Monell's* rule that public employees are responsible for
> their own misdeeds but not for anyone else's. Section 1983 establishes a
> species of tort liability, and one distinctive feature of this nation's tort law
> is that there is no general duty of rescue. *DeShaney v. Winnebago County
> Dep't of Social Services*, 489 U.S. 189 (1989), shows that this rule applies to

constitutional tort law, as to private tort law, for DeShaney holds that a
public employee who knows about a danger need not act to avert it. As
we remarked in *Richman v. Sheahan*, 512 F.3d 876, 885 (7th Cir. 2008),
"there is an exception for the case in which [a public employee] is
responsible for creating the peril that creates an occasion for rescue, as
when, having arrested a drunken driver, [a police] officer removes the key
from the ignition of his car, as a result stranding the passengers late at
night in an unsafe neighborhood, and he does nothing to protect them".
But Salinas did not create the peril facing Burks or do anything that
increased the peril, or made it harder for Burks (or anyone else) to solve
the problem. The most one can say is that Salinas did nothing, when she
might have gone beyond the requirements of her job and tried to help
him. A layperson's failure to tell the medical staff how to do its job cannot
be called deliberate indifference; it is just a form of failing to supply a
gratuitous rescue service.

*Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (parallel citations omitted, brackets in

original). Furthermore,

If a prisoner is under the care of medical experts a non-medical
prison official will generally be justified in believing that the prisoner is in
capable hands. This follows naturally from the division of labor within a
prison. Inmate health and safety is promoted by dividing responsibility
for various aspects of inmate life among guards, administrators,
physicians, and so on. Holding a non-medical prison official liable in a
case where a prisoner was under a physician's care would strain this
division of labor.

*Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) *citing Spruill v. Gillis*,

372 F.3d 218, 236 (3rd Cir. 2004).

For the foregoing reasons, the court:

(1) GRANTS the plaintiff leave to proceed against defendants Sandra

Roark and Tonya Zimmerman for damages in their individual capacities on his

Eighth Amendment claim that they  exposed him to a high dose of

formaldehyde, causing him to develop a serious and painful rash;

(2) DISMISSES, pursuant to 28 U.S.C. § 1915A, all other claims, and DISMISSES defendants Dr. Marandet, Lynn Frye, Karen Cummings, Nurse Brown, K. Stephenson, L. Gamblion, Ed Busse, Mark Sever, Assistant Superintendent Treadwell, Major Hail, Captain Tucker, Captain Truax, Captain Bittle, and Legal Advisor Claire Retek;

(3) Pursuant to 42 U.S.C. § 1997e(g)(2), ORDERS that defendants Roark and Zimmerman respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

(4) DIRECTS the marshals service to effect service of process on defendants Sandra Roark and Tonya Zimmerman, and DIRECTS the clerk's office to ensure that a copy of this order is served on them along with the summons and complaint.

SO ORDERED.

DATED: April 23, 2010

s/William C. Lee
William C.  Lee, Judge
United States District Court
